NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARTINA FRASCA,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil Action No. 20-10194 (SDW)

**OPINION**

September 8, 2021

**WIGENTON,** District Judge.

Before this Court is Martina Frasca's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Henry J. Hogan's ("ALJ Hogan") denial of her claim for a period of disability and disability insurance benefits ("DIB") and her claim for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Hogan's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

I.     **PROCEDURAL AND FACTUAL HISTORY**

A. **Procedural History**

On January 27, 2017, Plaintiff filed an application for SSI alleging disability as of November 21, 2016.  (Administrative Record ("Record" of "R.") 277-284.)  Plaintiff additionally filed an application for a period of disability and disability insurance benefits on the same date.  (R. 273-274.)  Both claims were initially denied on May 3, 2017, (R. 189-194, 195-199), and again on reconsideration on September 2, 2017, (R. 207-209, 210-212).  Plaintiff then filed a written request for a hearing on September 25, 2017, (R. 213-214), and ALJ Hogan held an administrative hearing by video on May 9, 2019, (R. 95-126).  ALJ Hogan presided over the video-conference hearing in Boston, Massachusetts, during which Plaintiff appeared with counsel and a vocational expert in Newark, New Jersey.  (*Id.*)  On August 13, 2019, ALJ Hogan issued an unfavorable decision, denying Plaintiff's claims.  (R. 75-94.)  On October 17, 2019, Plaintiff requested that the Appeals Council review the decision.  (R. 1-6.)  On November 26, 2019, Plaintiff submitted an additional evaluation from Occupational Assessment Services, Inc. (the "OAS Evaluation").  (R. 7-8.)  On June 4, 2020, the Appeals Council denied Plaintiff's request.  (*Id.*)  Plaintiff now seeks a reversal or remand of that decision.  (D.E. 16.)

B. **Medical and Factual History**

At the time she filed her application for SSI, Plaintiff was 21 years old.[1]  (R. 128; D.E. 17 at 2.)  Plaintiff currently lives in Passaic, New Jersey with her parents and younger brother.  (R. 18.)  The Record demonstrates Plaintiff's history of anxiety and depression, as well as lower back

---

[1] Thus, this Court considers whether the "claimant can be found eligible for the Supplemental Security Income using the adult standards, as the claimant was age 21 at the time the application was filed." *Jones v. Colvin*, Civ. No. 14-00169, 2015 WL 1474851, at *7 (E.D. Mo. Mar. 31, 2015).  However, because Plaintiff was classified as a younger individual, she is presumed to be more readily able to adjust to other work than older individuals. *See* 20 C.F.R. §a§ 404.1563(c), 416.963(c); *see Soghoian v. Colvin*, Civ. No. 12-1232, 2014 WL 996530, at *3 n.5 (E.D. Va. Mar. 13, 2014).

pain due to a motor vehicle accident that occurred in or around summer 2017.[2] (*See*, *e.g.*, R. 80-81 (stating that the accident occurred in July 2017), 464-65 (stating that the accident occurred in September 2017).) The following is a summary of the evidence.

Plaintiff graduated from West Orange High School in 2014. (R. 18, 303.) Since then, she has obtained her associate degree in English from Passaic County Community College in 2019 and worked part-time as a bagger at ShopRite from 2014 to 2017, when she injured her back in a car accident. (R. 18-19, 101-02, 303-04, 372-76.) Plaintiff worked part-time as a nanny as of April 2018 and now attends William Patterson University, where she is majoring in English. (R. 18-19, 84.)

The Record demonstrates that Plaintiff suffers from anxiety and depressive symptoms for which she sees a social worker and psychiatrist for medication and therapy. (R. 103-04, 135.) Plaintiff has received psychiatric treatment from Alison Weiner, M.D., ("Dr. Weiner"), since 2015. (R. 382.) On February 7, 2017, Dr. Weiner responded to the state disability agency's request for information with largely illegible notes. (*See* R. 436-40, 447.) Those notes seem to suggest that Plaintiff experienced "mood swings," "depression," and "suicidal ideations." (R. 436.) Dr. Weiner also stated that Plaintiff exhibits "selective mutism." (R. 439.) While Dr. Weiner indicated that Plaintiff was limited in all areas regarding her ability to do work related to mental activities, she did not provide support for her finding. (*Id.*) Additionally, Dr. Weiner indicated that Plaintiff was capable of "managing or directing the management of benefits in [her] own best interest." (R. 440.)

---

[2] The medical conditions underlying Plaintiff's initial application are not clear from the record. This Court notes, however, that although the ALJ discussed Plaintiff's back pain and fully considered the medical evidence in the record regarding same, the car accident that caused or exacerbated Plaintiff's lower back pain did not occur until long after her application for disability and SSI benefits.

3

On April 6, 2017, Alexander Hoffman, M.D. examined Plaintiff and found that she "has a major problem with selective mutism" and "possibly bipolar disorder" but noted that Plaintiff had not had inpatient hospitalization since 2011 for suicidal ideation. (R. 442-43.) On July 26, 2017, Disability Determination Services ("DDS") requested additional information from Dr. Weiner. (R. 445-47.) Dr. Weiner responded by noting that her last visit with Plaintiff was on June 20, 2017, and Plaintiff's status had changed due to her 2017 motor vehicle accident. (*Id.*)

An MRI of Plaintiff's cervical spine and lumbar spine was taken after the car accident in September 2017. (R. 450.) Regarding her cervical MRI, while it was observed that there was "loss and reversal of the normal cervical lordosis suggesting muscular spasm," the MRI was "unremarkable." (*Id.*) Plaintiff's lumbar MRI revealed "a moderate-sized central disc herniation" at L5-S1 and "a moderate to large central and right paracentral disc herniation" at L4-L5. (R. 449.)

On April 23, 2018, Christopher Kyriakides, D.O., ("Dr. Kyriakides"), examined Plaintiff during a follow-up for her lower back pain. (R. 464-65.) Dr. Kyriakides noted that Plaintiff changed jobs "as she cannot do any lifting" due to her back injuries and began working part-time as a nanny. (R. 464.) Dr. Kyriakides suggested that Plaintiff "remains partially disabled" and would "need to continue her physical therapy treatment program" and "continue her medication." (R. 465.) Additionally, Dr. Kyriakides recommended that Plaintiff schedule a follow-up with a spine specialist. (*Id.*)

**C. Disability and Function Reports**

Plaintiff submitted a disability report dated January 27, 2017, (R. 297-309), two function reports dated February 4, 2017 and July 24, 2017, (R. 310-17, 343-50), and a third-party function report dated February 5, 2017, (R. 318-25), all of which detail her ability to perform daily activities, including completing various light household tasks and maintaining a minimal social

life.  Plaintiff's disability report averred that her conditions did not affect the following activities: hearing; reading; breathing; understanding; coherency; concentrating; sitting; standing; walking; seeing; using hand(s); or writing.  (R. 299.)

Plaintiff's first function report averred limitations in areas such as understanding and concentrating.  (R. 311.)  However, the report also indicated that Plaintiff could walk for one mile before needing to stop and rest, she enjoyed "reading, writing, music, [and] art," she did not have any problems "getting along with others," and she cared for her two cats.  (R. 310-17.)  Plaintiff's third-party function report indicated the following limitations: talking, memory, completing tasks, concentration, understanding, and following instructions.  (R. 323.)  In her second function report, Plaintiff indicated that she has "no problem with personal care," prepares frozen food on a daily basis, does laundry, and unloads the dishwasher.  (R. 343-45.)  Regarding social activities, Plaintiff wrote that she would "go out to eat with friends monthly" and "text them daily."  (R. 347.)  However, she also indicated the same limitations as those in her third-party function report.  (R. 348.)

**C. Hearing Testimony**

At the hearing before ALJ Hogan, Plaintiff testified about her education, previous employment, daily activities, and medical treatment.  (*See generally* R. 95-126.)  ALJ Hogan heard testimony from Plaintiff and Vocational Expert Courtney Olds ("VE Olds").  (*Id*.)  Plaintiff testified that she stopped working as a bagger at ShopRite in 2017 because she "couldn't lift" after suffering a back injury from a motor vehicle accident.  (R. 101-02.)  Plaintiff saw a doctor for "pain management" "every few months" because of her back injury.  (R. 103-04.)  Plaintiff also testified that she suffers from anxiety and depression for which she sees a psychiatrist "every couple months" and takes medication which "sometimes" helps.  (R. 104.)  While Plaintiff

5

answered affirmatively when asked if she has "a problem being around people," she stated that she can "ride a bus with people on it" and "sometimes" socializes with her family and friends. (R. 105; *but see* R. 338 (Plaintiff "spend[s] time with others"), 339 (Plaintiff "get[s] along with others"), 340 (Plaintiff has never been "fired or laid off from a job because of problems getting along with people").) When asked about her daily activities, Plaintiff testified that she does not have any problems walking, gets herself dressed every day, drives to school, does her laundry, and "sometimes" cooks. (R. 106-09.) However, Plaintiff also stated that she has problems sitting, reaching overhead, and cannot lift "anything heavy," all due to her back pain. (R. 112-13, 117.)

VE Olds testified that a hypothetical individual matching Plaintiff's vocational profile, age, education, and limitations, as specified by the ALJ, could perform representative light, unskilled occupations in the national economy, such as "mail sorter," "housekeeper," and "hand packager." (R. 119-20.) When questioned by Plaintiff's counsel however, VE Olds stated that he did not believe Plaintiff could perform any of these jobs on a full-time basis. (R. 121.)

## II.     LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, Civ. No. 8-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the

claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to an ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

8

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual

functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

**A.**

On August 13, 2019, ALJ Hogan issued a decision concluding that Plaintiff was not disabled. (R. 75-94.) The decision properly applied the five-step disability test within the meaning of the Act. There is no basis for reversal or remand, because the ALJ's findings are supported by substantial evidence.

At step one, ALJ Hogan determined that Plaintiff has not engaged in SGA since the alleged onset date of Plaintiff's disability, despite her work activity. (R. 80.) At step two, Plaintiff was found to have the following severe impairments: anxiety and depression. (R. 80-81.) In making this finding, the ALJ concluded that these severe impairments "significantly limit[ed]" Plaintiff's "ability to perform basic work activities." (*Id*.) However, ALJ Hogan found Plaintiff's lower-back injury to be non-severe. (R. 81 (noting that Plaintiff did not allege "limits that would prohibit her from walking, standing, or sitting").)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that "me[t] or medically equal[ed] the severity of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 81.) The ALJ concluded that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of listings of 12.04 and 12.06." (R. 81.) In so finding, the ALJ first considered whether Plaintiff satisfied the necessary "paragraph B" criteria, which asks whether Plaintiff's mental impairments "result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (R. 81-82.) The ALJ concluded that Plaintiff has a "moderate limitation" in understanding, remembering, or applying information and interacting with others, and a "mild limitation" in concentrating, persisting, or maintaining pace and adapting or managing oneself. (R. 82-83.)

11

Thus, as Plaintiff's "mental impairments d[id] not cause at least two 'marked' limitations or one 'extreme' limitation," ALJ Hogan determined "the 'paragraph B' criteria [were] not satisfied." (R. 83.) The ALJ also concluded that Plaintiff did not meet the necessary "paragraph C" criteria.[3] (R. 83.)

Before undergoing the analysis in step four, the ALJ determined that Plaintiff "ha[d] the residual functional capacity ("RFC") to perform light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (R. 83.) However, ALJ Hogan noted the following exceptions: "occasional bilateral overhead reaching; simple routine repetitive tasks; occasional interaction with public; occasional work with coworker with not tandem task; and occasional supervision." (*Id*.) The ALJ defined "occasional" as "less than 1/3 of an 8 hour workday." (*Id*.) In reaching this RFC conclusion, ALJ Hogan followed a two-step process in which he first evaluated "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms," and second evaluated "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] functional limitations." (R. 84.) The ALJ based his conclusion on hearing testimony, objective medical evidence, and opinion evidence. (R. 83-82.)

After considering Plaintiff's testimony, in which she alleged disability due to symptoms of depression and anxiety, ALJ Hogan concluded that while Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence, and limiting effects of [those] symptoms are not entirely

---

[3] In making his determination, ALJ Hogan found that "there [wa]s no evidence in the record to show that [Plaintiff] has experienced repeated episodes of decompensation, each of extended duration; nor that [s]he has experienced a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; nor that she has a current history of 1 or more years inability to function outside a highly supporting living arrangement, with an indication of continued need for such an arrangement." (R. 83.)

12

consistent with the medical evidence and other evidence in the record." (R. 84.) The ALJ noted that the medical record "indicated treatment for anxiety and depression" but was lacking in evidence "detailing her psychiatric treating history." (R. 85.) Specifically, ALJ Hogan found that Plaintiff's psychiatrist, Dr. Weiner, "did not describe or provide support for her finding" that Plaintiff "was limited in all areas regarding her ability to do work related to mental activities." (*Id*.) Likewise, the ALJ noted that the medical record concerning Plaintiff's back pain was scant, mentioning that "Dr. Kyriakides noted that [Plaintiff] remained partially disabled, but he did not specify as to her limitations." (*Id*.) Thus, ALJ Hogan determined that "the medical evidence falls short of demonstrating the existence of physical or psychological symptoms and limitations that are so severe that the claimant cannot perform any work on a regular or continuing basis." (*Id*.)

Regarding the opinion evidence, ALJ Hogan gave "partial weight to the opinions of the non-examining state agency medical consultants" as "their opinions were consistent with other significant evidence of record." (R. 86.) Conversely, the ALJ gave "no weight" to Dr. Weiner's finding that Plaintiff "is unable to function independently" due to her mental impairments, as that finding was "inconsistent with the longitudinal treatment record." (*Id*.) The ALJ also gave "little weight" to the opinion of Steven Clarke, D.O., as he "opined that [Plaintiff's] physical condition was treatment resistant and non-resolving in nature" but a "September 2017 MRI was an unremarkable view of the cervical spine only showing a loss and reversal of the normal cervical lordosis suggesting muscle spasm." (*Id*.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a bagger. (R. 87.) Lastly, at step five, the ALJ concluded that, based on Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Plaintiff was not disabled because she could perform jobs that existed

13

in significant numbers in the national economy. (R. 88.) Relying on the VE's testimony, the decision detailed the availability of light work jobs that Plaintiff could perform. (*Id*.) VE Olds testified that an individual such as Plaintiff could perform occupations that were widely available in the national economy, such as mail sorter, housekeeper, and hand packager. (*Id*.) ALJ Hogan therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 88-89.)

**B.**

On appeal, Plaintiff seeks reversal of the Commissioner's decision, or remand for a new hearing, contending that: (1) there is a reasonable probability that the OAS Evaluation would change the outcome of the ALJ's decision because it corroborates medical evidence in the record; and (2) the ALJ failed to consider the totality of the medical evidence, including two medical professionals' opinions (psychiatrist Dr. Weiner and treating physician Dr. Clarke) and the 2017 lumbar spine MRI. (*See* D.E. 16 at 9-19.) After considering each argument in turn, this Court finds them unpersuasive.

First, Plaintiff takes issue with the Appeals Council's decision to disregard the OAS Evaluation in its denial of review. (D.E. 16 at 9.) A plaintiff who attempts to present new evidence on appeal that was not submitted at least five days prior to the ALJ hearing must demonstrate that the evidence "is new, material, and relates to the period on or before the date of the hearing decision" and that "there is a reasonable probability that the additional evidence would change the outcome of the decision." *Hawks v. Berryhill*, Civ. No. 17-1020, 2018 WL 6728037, at *4 (M.D. N.C. 2018) (quoting 20 C.F.R. §§ 404.970, 416.1470 (2017)). Further, the Appeals Council will "only consider additional" evidence if the moving party shows "good cause for not informing [the

Council] about or submitting the evidence as described in § 404.935 ….." *Id.* Good cause requires evidence that the party was "misled," or evidence that "physical, mental, educational, or linguistic limitation(s)" or "[s]ome other unusual, unexpected, or unavoidable circumstance[s]" prevented the moving party from properly presenting the evidence. *Id.*

Similarly, the District Court may remand a case to the Commissioner "when the claimant seeks to rely on evidence that was not before the ALJ … only if the evidence is new and material and if there was good cause why it was not previously presented …." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *see also Keeton v. DHHS*, 21 F.3d 1064, 1067 (11th Cir. 1994); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). New evidence is considered material if it is "probative and relevant to the time period" and "creates the reasonable probability that it would have changed the [hearing] outcome." *Volage v. Astrue*, Civ. No. 11-4413, 2012 WL 4742373, at *10 (D.N.J. Oct. 1, 2012); *see also Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).

The OAS Evaluation opines that Plaintiff is unemployable. (R. 9-72.) Plaintiff asserts that the new evidence is material "because it relates to the time period for which benefits were denied and does not concern a later acquired disability, or subsequent deterioration, having reviewed the medical records from 2016 onwards." (D.E. 16 at 11.) The Appeals Council concluded that Plaintiff had not shown good cause for failure to submit the OAS Evaluation within the five-day period and ultimately concluded that the evaluation did not support a finding that there was a reasonable probability of a different outcome. (R. 1-3.) This Court agrees. The OAS Evaluation relies on the same medical evidence that was before the ALJ during Plaintiff's hearing. (*See generally* R. 9-72.) Thus, Plaintiff fails to suggest a reasonable probability that the OAS Evaluation would change the outcome of the ALJ's decision.

As to the good cause requirement, "[s]ome courts have defined good cause as requiring a claimant to show 'some justification' for failing to submit the evidence" while "[o]thers have referred to good cause as having 'good reason' for failing to submit the evidence to the ALJ in the first place." *Shuter v. Astrue*, 537 F. Supp. 2d 752, 758 (E.D. Pa. 2008) (citations omitted). Plaintiff contends that she met the good cause requirement, because the new OAS Evaluation was not in existence at the time of the hearing. (D.E. 16 at 13.) However, a plaintiff must go beyond stating that evidence is new in order to fulfill the good cause requirement. *See Parris v. Colvin*, Civ. No. 13-00004, 2014 WL 427697, at *5 (W.D.N.C. Feb. 4, 2014) (finding good cause does not exist "where a plaintiff creates and submits new evidence after an unfavorable decision by an ALJ"). As Plaintiff fails to do so here, the good cause requirement is not met.

Second, the ALJ properly considered the medical opinions and MRIs when assessing Plaintiff's residual functional capacity. "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Further, "an ALJ's credibility determination is afforded significant deference." *Al Muraiheg v. Colvin*, Civ. No. 16-75, 2017 WL 4124587, at *1 n.1 (W.D. Pa. Sept. 18, 2017) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). The ALJ properly followed the required two-step process for evaluating Plaintiff's subjective complaints: first evaluating the medical impairment to determine whether it could be expected to produce the complained of symptoms, and next evaluating the claimed intensity and persistence of those symptoms. *Hartranft*, 181 F.3d at 362. The Record contained some contradictory evidence concerning intensity, persistence, and function. For example, Dr. Clarke found Plaintiff's back injury to be "non-resolving in nature," (R. 459), yet Plaintiff's 2017 MRI revealed an "unremarkable" view of the cervical spine, (R. 450). Additionally, Plaintiff was still capable of walking and performing daily activities, including

16

working part-time as a nanny. (R. 87, 106-09.) Thus, the ALJ properly gave little weight to Dr. Clarke's opinion evidence because it was inconsistent with the medical record.

The ALJ also appropriately assigned no weight to Dr. Weiner's opinion that Plaintiff was "unable to function independently" due to her mental impairments. (R. 439.) As noted by ALJ Hogan, Dr. Weiner's notes were largely illegible. (R. 439.) As such, it was proper for the ALJ to discount her opinion evidence. *See McQueen v. Comm'r of Soc. Sec.*, 322 F. App'x 240, 245 (3d Cir. 2009) (noting that it was proper for the ALJ to give "less weight" to Plaintiff's treating physician's opinion due to "indecipherable notes"). Moreover, ALJ Hogan noted that the legible areas of Dr. Weiner's notes were inconsistent with the "longitudinal medical record." (R. 87); *see Wallace v. Colvin*, Civ. No. 13-79, 2014 WL 1664895, at *6 (E.D. Mo. Apr. 25, 2014) (affirming the ALJ's opinion where "[t]he objective evidence or absence thereof provided no support [for the discounted] opinion and was inconsistent with [that] opinion."). While Dr. Weiner opined that Plaintiff was extremely limited in every functional capacity due to her mental impairments, Plaintiff testified that she was able to perform a significant number of daily activities, including attending school, completing her assignments, and working as a bagger and nanny. (R. 102, 106-09, 303.) Therefore, the ALJ appropriately assessed the record evidence in determining that Plaintiff was not disabled within the meaning of the relevant statutes.

### IV. CONCLUSION

Because this Court finds that ALJ Hogan's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

18